**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Angelos MARKOPOULOS,**
**Defendant–Appellant.**

**No. 87–1907.**

United States Court of Appeals,
Tenth Circuit.

June 2, 1988.

Robert J. Gorence, Asst. U.S. Atty., (William L. Lutz, U.S. Atty., and Presiliano A. Torrez, Asst. U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Dwight K. Shellman III (Richard S. Vermeire, with him on the brief), of Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, Colo., for defendant-appellant.

Before MOORE, BARRETT and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Angelos Markopoulos was convicted by a jury of conspiracy to distribute marijuana. On appeal, he challenges the admissibility of several critical items of evidence and claims the trial court erred in failing to limit certain jury instructions to his codefendant, Frank Van Truesdell. He also contends the evidence at trial was insufficient to support his conviction. After reviewing the record, we have determined none of the issues raised by Mr. Markopoulos constitutes reversible error. Consequently, we affirm.

I.

On December 6, 1986, officers at a Border Patrol checkpoint near Las Cruces, New Mexico, discovered 148 pounds of marijuana in the trunk of a car driven by Frank Van Truesdell. After his arrest, Mr.

Truesdell made several statements to law enforcement officials in which he implicated Mr. Markopoulos. Several items seized from the passenger compartment of the car also indicated some participation by Mr. Markopoulos.

Mr. Markopoulos and Mr. Truesdell were tried jointly on charges of possessing marijuana with intent to distribute and conspiracy to distribute marijuana. Prior to trial, Mr. Markopoulos moved to suppress the items seized from Mr. Truesdell's car and to exclude evidence of Mr. Truesdell's post-arrest statements to law enforcement officials. The court denied the motion to suppress physical evidence but instructed the prosecution to remove all references to Mr. Markopoulos from the post-arrest statements and to avoid eliciting any such references during trial.

At trial, the government introduced motel records showing Mr. Markopoulos and Mr. Truesdell stayed in nearby motels in Las Cruces, New Mexico, just prior to Mr. Truesdell's arrest. The government also introduced telephone records showing that the two men had placed calls to each other's motels and that Mr. Truesdell placed several calls to Mr. Markopoulos' home in Virginia.

The New Mexico police officer who arrested Mr. Truesdell testified that Mr. Truesdell said he was taking the marijuana to Virginia and had received $2,000 for a similar trip earlier that year. The officer also identified three items he had seized from the passenger compartment of Mr. Truesdell's car: a car rental contract, a credit card voucher, and a spiral notebook. The trial court overruled Mr. Markopoulos' objections that the contract and voucher were hearsay and that the notebook was not in the same condition as when it was seized[1] and admitted all three items into evidence.

Mr. Markopoulos was linked to the seized items by two separate witnesses. A records custodian for National Car Rental testified that the rental contract and credit card voucher showed Mr. Markopoulos had rented the car and authorized Mr. Truesdell as an additional driver. He also testified that Mr. Markopoulos would have been required to present a valid driver's license and major credit card at the time of rental. A special agent from the Drug Enforcement Administration (DEA) testified that the notebook seized from Mr. Truesdell's car was used to log travel expenses and listed Mr. Markopoulos' home and business telephone numbers under the notation "Greek Man." Mr. Markopoulos' attorney made no objection to any of these statements.

The DEA agent also testified that Mr. Truesdell told him he had transported a load of marijuana to Virginia on November 25, 1986, and had bought some clothing in the area on the next day. The government then introduced two receipts for purchases Mr. Truesdell made at Arlington, Virginia, clothing stores on November 26, 1986. The trial court overruled Mr. Markopoulos' hearsay objection and admitted the receipts into evidence.

Mr. Markopoulos presented no evidence in his defense but moved for a directed verdict at the close of the government's presentation. The trial court denied the motion and submitted the case to the jury, which returned a verdict convicting Mr. Markopoulos of the conspiracy charge and acquitting him of the possession charge.

## II.

▪ Mr. Markopoulos argues that testimony regarding Mr. Truesdell's post-arrest statements was hearsay and violated his Sixth Amendment right to confront the witnesses against him. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). However, statements by a codefendant are admissible when the court excludes all references to the defendant and instructs the jury that the statement is not admissible against the defend-

---

1. There was evidence that Mr. Truesdell scratched out some notations from the note-book after it was seized.

ant. *Richardson v. Marsh*, — U.S. —, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

■ We do not agree with Mr. Markopoulos' contention that *Richardson* also requires exclusion of Mr. Truesdell's statements that he was headed for Virginia and had been paid to transport another load of marijuana to Virginia. It is true that the statement involved in *Richardson* eliminated "not only the defendant's name, but any reference to her existence." *Id.* at 1709. However, the Court decided the statement was admissible because it was "not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Id.* at 1707.[2] Since the statements at issue in this case were also only inferentially incriminating, we believe they satisfy the requirements set forth in *Richardson* and were properly admitted.

■ Mr. Markopoulos also argues evidence concerning Mr. Truesdell's spiral notebook was inadmissible hearsay. However, Mr. Markopoulos' failure to raise a hearsay objection to the notebooks at trial precludes consideration of the issue on appeal. Fed.R.Evid. 103(a)(1). Moreover, the record reveals the notebook was not offered to prove the truth of the facts it asserted and was presented only as circumstantial evidence of conspiracy. *See United States v. Panebianco*, 543 F.2d 447, 457 (2d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977) (notebook entry not hearsay where mere existence of entry is probative).

■ Mr. Markopoulos' hearsay objections to the admission of the rental car contract, credit card voucher, and Virginia receipts are more problematic. *See United States v. Reese*, 561 F.2d 894, 903 n. 18 (D.C.Cir.1977) (rental contract is hearsay evidence of identity of renter); *United States v. Watkins*, 519 F.2d 294, 296 (D.C. Cir.1975) (receipts are hearsay evidence of making of payment). Our review of the record confirms the trial court improperly admitted these items without a proper foundation for exception from the hearsay rule. Contrary to the government's contention, the records custodian for National Car Rental did not establish a proper foundation for the business records exception to the hearsay rule.[3] The government's contention that the rental documents were admissions by a party-opponent is also without merit, since the government never verified the signatures on either document.[4]

■ Although we hold these documents were improperly admitted, we do not believe their admission warrants reversal. Examination of the record leads us to the conclusion that the admission of the Virginia receipts was harmless error with respect to Mr. Markopoulos. The record also shows that Mr. Markopoulos' counsel did not object to the testimony setting forth the hearsay contained in the rental documents. Consequently, Mr. Markopoulos failed to preserve the objection he raised when the documents were first admitted. The admission of the receipts and rental documents is not reversible error.

### III.

■ Mr. Markopoulos also takes exception to two jury instructions. One of the

---

2. The Court reasoned that "while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of *Bruton's* exception to the general rule [assuming jurors follow their instructions]." *Id.* at 1708.

3. The records custodian did not testify until *after* the trial court had already admitted the items into evidence, and even then did not testify that the records were "kept in the course of a regularly conducted business activity" or that it was "the regular practice of that business activity" to make those records. *See* Fed.R.Evid. 803(6).

4. Our review of the record convinces us there was insufficient evidence of "distinctive characteristics, taken in conjunction with circumstances" to permit authentication of the documents under Fed.R.Evid. 901(b)(4). We also reject the government's contention that the signatures' accuracy "goes to ... weight, not to ... admissibility." *Federal Deposit Ins. Corp. v. Staudinger*, 797 F.2d 908, 910 (10th Cir.1986). Our opinion in *Staudinger* held only that courts need not require proof that a document is accurate before admitting it under the business records exception.

challenged instructions states that "[t]he element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him." The other states that "[i]f the jury should find beyond a reasonable doubt from other evidence in the case that the accused did the act charged ... [it] may consider evidence as to an alleged act of a like nature in determining the state of mind or intent with which the accused did the act charged."

Mr. Markopoulos argues these instructions were error with respect to him because there was no evidence that he himself engaged in prior acts of a like nature or deliberately closed his eyes to any material fact. He contends the instructions impermissibly allowed the jury to convict him on the basis of Mr. Truesdell's prior acts or by finding he "should have known" what Mr. Truesdell intended to do. *See United States v. Manriquez Arbizo,* 833 F.2d 244, 248 (10th Cir.1987) (deliberate ignorance instruction constitutes error absent evidence of avoidance of knowledge); *Beckwith v. United States,* 367 F.2d 458, 460 (10th Cir. 1966) (jury must be instructed to disregard evidence of acts committed by coconspirator prior to conspiracy's inception).

 Although we agree that the instructions were erroneous with respect to Mr. Markopoulos, we do not agree that they require reversal. Mr. Markopoulos was convicted only on the conspiracy charge. This conviction could not have been based on evidence of Mr. Truesdell's prior acts, as the jury was instructed that evidence of Mr. Truesdell's statements "should not be considered in any way whatever as evidence with respect to Angelos Markopoulos." The jury was also precluded from basing Mr. Markopoulos' conviction on a finding that he "should have known" Mr. Truesdell's plans, as they were instructed they must find the defendants "willfully" became members of the conspiracy.[5] *See United States v. Kapnison,* 743 F.2d 1450, 1461 (10th Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2017, 85

L.Ed.2d 299 (1985) (sufficiency of instructions determined by viewing instructions as a whole). Consequently, no reversible error occurred.

## IV.

Mr. Markopoulos' final contention is that the record contains insufficient evidence to support his conviction because it only establishes that he associated with Mr. Truesdell and was present in the vicinity of Mr. Truesdell's unlawful activity. *See United States v. McMahon,* 562 F.2d 1192, 1196 (10th Cir.1977) (defendant may not be convicted of conspiracy without proof of knowing participation). We disagree. Evidence that Mr. Markopoulos traveled to New Mexico prior to Mr. Truesdell's departure, communicated with Mr. Truesdell during his stay in New Mexico, rented the car Mr. Truesdell used to transport the marijuana, and was listed in the notebook Mr. Truesdell used to log his travel expenses was sufficient for the jury to infer that Mr. Markopoulos was acting pursuant to a common plan and purpose and was guilty of conspiracy. *See, e.g., United States v. Bucaro,* 801 F.2d 1230, 1232–33 (10th Cir. 1986) (conspiracy may be proven by circumstantial evidence).

AFFIRMED.

---

5. The instructions defined "willfully" as "voluntarily and purposely, with the specific intent to do something the law forbids." They also informed the jury that "[a] showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge."